Okay, we are, boy, we're moving along, folks. Case number five, United States v. Campbell, which is case number 21-18-12. Bills? Good morning, Your Honors. Good morning, Mr. Bills. May it please the court, counsel. I'm the attorney for defendant appellate Quincey Campbell. My name is Bart Bills. In July of 2017, Mr. Campbell was arrested along with approximately 18 other individuals in the county of Kankakee. He was arrested for the delivery of a small amount of drugs. In August of 2017, he was originally arrested and charged with a state case, along with the other 18 individuals who were charged with state cases. His case was the only case that was indicted federally, and that case was indicted in August of 2017. By the next year, July of 2018, my client entered a guilty plea. Now, originally, my client was classified with his PSI, his original PSI. He was classified as a career offender based in part on a 2006 conviction for intent to deliver that subsequently I was able to file a motion in state court, and that state judge vacated the intent to deliver part, the possession part. What were the grounds for vacating that conviction, Mr. Bills? Well, the grounds was that it was an ineffective system of counsel. My client was not properly advised of the actual terms of the case. There was insufficient evidence to actually sustain a conviction for intent to deliver under the facts of the case. That was not explained to my client. It was on the record. In looking at the transcripts, I wasn't the counsel in 2006 for my client, but just looking at the transcripts, my client made it clear that he just wanted to get the case over with, and he was willing to just enter a conviction in order to do so. The judge, upon having a contested hearing at state court, agreed with the petition and vacated the intent to deliver portion. Once that was vacated, my client's range went from 188 to 235-month range down to 17 months to 27 months. After that was vacated, the government then changed their position and stated that allegedly, under relevant conduct, there were some alleged, uncharged, unproven, alleged transactions between my client and an individual who was not a part of the indictment in the instant case as a customer. Ms. Emily McGrath, the government had the position that my client allegedly served Ms. McGrath during 2015-2016, and they used that as a bootstrap to then pull in an old conviction and to make that qualify as a career offender for my client, which put him back into the career offender category. And that is the reason, in part, for this appeal in the instant case right now. Prior to the sentencing hearing, there was a contested hearing that we had, and Ms. McGrath testified, several officers testified, and the district court ruled that the alleged transactions between my client and Ms. McGrath amounted to relevant conduct in the instant case. Now, in the instant case, the allegations were what my client pleaded guilty to was a couple of small deliveries to a Ms. Amber Zumeyland, I'm hoping I'm pronouncing her name correctly, Ms. Zumeyland. There was never any allegation in the instant case that my client ever delivered any drugs to a Ms. McGrath. As a matter of fact, Ms. McGrath's only mention in the instant case was more along the lines of a co-conspirator, meaning that she supposedly gave drugs to Ms. Zumeyland, but not received drugs from my client for her use. And it's the position of the defense that under the law, just because my client pleaded guilty to a delivery of drugs in the instant case, and he was accused of an unproven accusation, I would add, of supposedly selling drugs to Ms. McGrath in 2015, 2016, that doesn't automatically mean that that's a part of the same scheme, the same circumstances, and it does not amount to relevant conduct in this case. You know, Mr. Beals, Judge Bruce expressly stated that even if he miscalculated the guidelines range, he still would have imposed the very same sentence based on the Section 3553A factors. Given that express statement, why wouldn't any guideline ever be deemed harmless, particularly where he did sentence him below the, you know, below the range? Well, in this case, it would, it's the position of the defense that it would not, it should not be deemed harmless because there's a big difference between having a sentencing hearing, and the range is 17 to 27 months. Nonviolent offense, and then the judge, after hearing all of, hearing my client's background, the information that was provided at the sentencing hearing, and then the judge issuing a sentence of 10 years, which is, which would be greatly above a range of a year and a half to two years. Even under 3553, that sentence would be looked at, I would imagine, very skeptically in a situation like that. The only reason in this situation we look at a range and it's considered below the guidelines is because of the fact the guidelines are artificially inflated. And it also goes to... It depends. It depends on how much you think about that, right? Because I gotta say, this is an issue, Mr. Beals, that I've thought a lot about and written a lot about over the years on behalf of the court. And I have to say, this is the most dramatic cliff I have ever seen in a guideline calculation, going from offense level 10 to offense level 31, and as well as criminal history category five to six. All based upon either, if I understand this correctly, either the effect to be given to the since vacated Kankakee conviction from 2006, or the relevant conduct findings by the district court that reached the 15 year back, look back period, to pick up another predicate offense for career offender, right? I mean, this is the notion that you should have a virtually tenfold difference in guideline range based on those two branches is about as close to arbitrary and capricious in application as I think the sentencing guidelines could be. So in those kinds of cases for years, we've been encouraging district judges to do exactly what Judge Bruce did in this case. Make a set of guideline findings, but then ask yourself, what's the right sentence here under 3553A? And we have Judge Bruce telling us, I was here till midnight last night, I've thought really hard about this case. I'm not sticking with either of those sets of guideline calculations. I'm looking at this individual, this offense, and here's my sentence. I would have thought it would have been arbitrary to use either of those guideline ranges mechanically. And instead, so why should we not take him at his word? Either way, he's going to be way off whatever the correct guideline range is. Well, Your Honor, it's not an issue of taking Judge Bruce at his word. I'm not questioning the integrity of Judge Bruce in its statement. The issue in this situation is looking at the circumstances as a whole, you have a situation where my client pleaded guilty to a very small amount of drugs and nonviolent drug offense. I see that my time has expired. You just can talk as long as we talk. Thank you, Your Honor. So here's a situation where my client was indicted for a very small amount of drugs, selling a very small amount of drugs in a nonviolent situation. There's no allegations of any violence whatsoever in this situation. And for that situation where his case, in every step, the prosecution, in every step, has put him in a position to elevate his sentence. He's in a situation where he's one of 18 people. He's the only one. His case is taken federally. In some cases, and this was raised during the sentencing hearing, I mentioned several cases, state cases where individuals that had worse backgrounds than my client received sentences, and in some cases re-offended, and it's possible that, and received a new sentence, and it's possible that they may have served that sentence by the time my client would have served this sentence for such a small amount of drugs. Due to that fact, I'm not saying that Judge Bruce was in any way being dishonest in what he was saying. I'm not saying that at all. What I am saying is if it's placed in a proper context by looking at the proper calculation of the guideline range, I believe that at that point, it could have been a different sentence, even though Judge Bruce is saying he looked at the 35 or 53 factors. Excuse me. Okay. I see that my time has expired. If there aren't any other questions. I'm going to give you back your rebuttal time, so not a problem. Thank you. Judge Boyle. Good morning again, Your Honors. May it please the Court, Catherine Boyle on behalf of the United States. Your Honors, in this case, a thorough review of the record reveals that the district court sentence was both procedurally sound and substantively reasonable. The district court correctly calculated the guidelines range and fully considered the 35-53A factors. The primary issue in this case revolves around the guideline range calculation, and in particular, whether Mr. Campbell's prior conduct in the summer of 2016 onward constituted the continuing course of conduct such that it qualified as relevant conduct under Section 1B1.3. Ms. Boyle, you'll forgive me, but for me, this is yet another case, another very sad case involving a relatively low-level, but it's true, persistent drug dealer who is also an addict. And now he's in his 40s, he's facing a sentence where the tail's wagging the dog. The government found a way to make the career offender guidelines stick, even though he had one of those state convictions vacated by pulling in relevant conduct. I do understand that Judge Bruce was very careful to make findings that would stick. It's just such a sad little case. Your Honor, we think that there are generally many, many tragic aspects to drug cases, not least of which is watching dangerous drugs such as heroin go into the community and have effects that we saw in this case, including the overdose of Emily McGrath. And certainly, Your Honor, we are sympathetic to the argument that the district court should consider the amount of drugs involved in particular offenses. But we'd also note here that Mr. Campbell was an offender who, even if we accepted every argument defense counsel has made, had at least a criminal history category of five involving at least a couple of prior felon and possession offenses and numerous drug offenses. Could you raise your voice a wee bit? Yes, Your Honor, I apologize. You know, even if we accept every argument Mr. Beals makes regarding criminal history and other issues, this is a defendant who had at least a criminal history category of five who was distributing dangerous drugs into the community. And as the government would argue, had even without the career offender designation, a criminal history category of six, including some disturbing past conduct, including multiple felon and possession offenses, aggravated battery involving actual harm, and multiple prior drug offenses. So it is true that, of course, the district court should properly consider the amount of drugs involved in these distributions and the amount of drugs distributed over the course of relevant conduct. But this is also not a defendant with an unserious criminal history. So is it your position that the career offender designation reflects the severity of Mr. Campbell's conduct? Your Honor, there's two aspects to the career offender designation, of course. That the criminal history category becomes six, which in this case we believe Mr. Campbell's criminal history category was properly six, even without considering the career offender designation aspect. And then there's also the issue that the offense level, of course, is elevated from what here would be an offense level of 24 if you take the drug amount that the judge calculated to an offense level of 31, taking into account his acceptance of responsibility. And, Your Honor, I believe this is a case where, certainly, as Judge Hamilton noted, there was a very large discrepancy between the defendant's guideline range with the career offender designation and without it, perhaps even larger than we see in certain other cases. And that's one of the reasons we trust district court judges in this situation not to mechanically apply the guidelines. And it's important here that Judge Bruce did not mechanically apply the guidelines. He looked at sort of the, I think Judge Hamilton referred to it as a cliff, but the extreme ends of each of these sentencing ranges and thought that really neither one of those was appropriate. So the judge made a decision that a 120-month sentence would be more appropriate, considering not only Mr. Campbell's conduct in terms of his criminal conduct, but that he had also made multiple efforts for the good of the community. Let me ask you this. If Mr. Campbell's lawyer had not gotten that 2006 conviction vacated, would the government have nonetheless then introduced the early sales to Ms. McGrath in the attempt to expand relevant conduct and add it to the judge's consideration here? Your Honor, I wasn't the attorney on the district court case, so it would really be speculation for me to say what the government would have done. But generally, the government does try to look fully at if there was a continuing course of conduct, so it's certainly possible that the government would have done that in that case. I can't speak to whether the examination of relevant conduct was even fuller, given the need to look at past convictions when the 2006 conviction was vacated. But typically speaking, the government tries to look at it. It appears that Ms. McGrath never failed a drug test, even though she said that she was regularly buying heroin from Mr. Campbell. The court found there was no evidence in the record regarding the timing of the drug tests and that they could have been at a time when Campbell was already in custody. Now, the government bears the burden of establishing relevant conduct, including the credibility of the witnesses, but the court seems to have construed the absence of evidence about the timing of the drug tests in the government's favor. Did the court reverse the burden of proof here? No, Your Honor, and of course the district court's credibility determinations are entitled to special deference. But if you look at the record and the district court's statements here, it seems pretty clear with regard to, first of all, it deemed Ms. McGrath and all the other witnesses credible. And the district court actually very carefully considered the defense challenges, including this issue of no positive drug tests. And the district court found several things. First of all, of course, that it was possible Mr. Campbell had been incarcerated, but I think what the district court was really looking at here was also the fact that Ms. McGrath said during her testimony, you know, the probation officer warned me. There were only two or three tests. The probation officer warned me before I had to drop. And in that sense, along with, of course, Ms. McGrath's demeanor and other factors, deemed her testimony as to whether she had actually been engaged in regular use at this time as being credible. And of course, you know, that was backed up by her own statements about some of the struggles she faced, including overdoses and additional charges. But I take it that you do concede, or do you, that the court seems to have construed the absence of evidence about the timing of the drug tests in the government's favor? No, Your Honor. I think the government considered all of the statements Ms. McGrath made about the drug test and considered the fact that there wasn't any evidence that it had not happened during Mr. Campbell's incarceration. But also really, I don't think that was construing it in the government's favor so much as taking into account that there wasn't evidence in the defendant's favor on that point. But there were a couple of other issues, including the fact that Ms. McGrath had been warned about the drops. There were very few drug tests and other things. Those were in the government's favor. And I believe that was why he deemed Ms. McGrath to be credible, despite that challenge and several other challenges that defense counsel raised. Did Ms. McGrath fit under federal probation supervision or state? That was state, Your Honor. And she was a heroin user, correct? She was. That's correct. Your Honor, I see I'm running low on time, so I would just like to say that really the relevant conduct issue, which this court reviews for clear error, determines the two other primary issues in this case. Judge Bruce correctly determined that from the summer of 2016 onward, Mr. Campbell was engaged in a continuous course of conduct, a series of unbroken drug sales, I think as this court deemed it, in Farmer. And that determination both informs the district court's determination of drug amount, which is reviewed for clear error, and the career offender designation. Because when we consider that this conduct started July 1, 2016, that means that Mr. Campbell's period of incarceration on his 1998 aggravated battery conviction extended into the 15-year period before the relevant course of conduct began. So we believe those other issues are determined by the clear error review of the relevant conduct issue. Your Honor, I see I'm out of time, but if you have any further questions. No, I think not. Thank you very much. Thank you, Your Honors. We're doing double duty today. Yes, thank you. Okay, Mr. Beals. Your Honor, just to briefly, a brief rebuttal, just a couple of things. The government mentioned about my client's background. It mentioned some violence in my client's background. That's in reference to the aggravated battery offense. That offense was from 1998. My client was... Sorry, that what? That offense was from 1998. My client was approximately 22 years old. My client is now 41, I believe 41 years old. He's a new father with a young son. He's a significantly different person than he was from 1998, and that was raised during the sentencing hearing. I also want to address the government's, some of the statements the government made about Ms. McGrath. This is the troubling aspect of how much power the prosecution has in these type of cases, and how much relevant conduct, quite frankly, can be abused in these type of cases. Ms. McGrath, as I mentioned before, she was not a part of the indictment. There was no accusation that my client in 2017 delivered drugs to Ms. McGrath. It was a different individual. It was Amber Zumeyler. So, during the hearing, Ms. McGrath made very, positioned the defense, very incredible statements. In going to the issue about her receiving second chance probation at the state level, and according to her, each time that she had a drug test coming up, she was warned by the probation officer. Well, this is the same individual. She was warned by the probation officer. Yes, that she would have to, that was her explanation. Now, that was on cross-examination. She didn't mention that in direct exam. And how does such a thing happen? That's a good question, Your Honor. I'm not familiar with how something like that can happen either, particularly since on direct examination, according to Ms. McGrath, she, in order to elevate the amount of heroin that my client would be held accountable for under relevant conduct, according to Ms. Zumeyler, she was using heroin from purchasing from my client every day or every other day. So, this individual on one hand is saying that she's using heroin every day or every other day while she's holding a job, but somehow is able to take more than one drug test during the course of about a year and a half, and never failed any of the drug tests. And so, there was no, you know, the government didn't bring in someone from the probation office and say, she didn't fail any of them. The government and the district court just took the word of an individual who was, one, in the police reports for having helped deliver drugs in the instant case, was never charged at the state level, was never indicted at the federal level. And while that was the case, she was on probation, second chance drug probation. No, she was never, there was no petition by the state prosecutor to violate her under that circumstance. And because of the second chance probation, Ms. McGrath actually does, at this time, does not have a felony conviction for anything. And so, one of the things that was argued at the sentencing phase was a question about Ms. McGrath's credibility based on the fact that she received a tremendous amount of latitude by the state prosecutor and the federal prosecutor, and for her to come in and be a witness for the federal prosecutor to elevate a relevant conduct for my client when she had a great deal of incentive to say whatever the government wanted her to say in those circumstances, or whatever she believed the government wanted her to say, even when it fell, it flew in the face of, I don't know, rational thought. So, Mr. Beals, your argument is that the district court was clearly erroneous in crediting her testimony? Yes, it was erroneous in crediting her testimony and also ruling that even her testimony about her alleged conduct amounted to relevant conduct. I see my time has expired if there are any more questions. Mr. Beals, you were appointed, were you not? By the court. That's correct. Well, you have sincere deep thanks of the court for taking on this case and for doing such a fine job for your client. Thank you. And Ms. Boyle, wherever you are, probably under that table again, thank you for the fine job you always do for the government as well. Twice today, no less. Okay, case will be taken under advisement.